UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HENRY SHORTER,

    Petitioner,

      v.       CAUSE NO. 3:18-CV-728-RLM-MGG

WARDEN,

    Respondent.

<u>OPINION AND ORDER</u>

Henry Shorter, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for armed robbery and burglary under Cause No. 20C01-1301-FB-6. Following a jury trial, on September 4, 2014, the Elkhart Circuit Court sentenced Mr. Shorter as a habitual offender to sixty years of incarceration.

<u>FACTUAL BACKGROUND</u>

In deciding a habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> On January 8, 2013, Shorter and his fourteen-year-old stepson, L.S., went to the home of Ricky Beaver ("Beaver"). Also at the home was Raymond Cross ("Cross"). Shorter told Beaver and Cross that he had a "lick" for them, which meant to rob someone. When Cross asked where the robbery would occur, Shorter stated that the potential robbery victim was an illicit drug dealer who had money, drugs, and a safe, but who did not carry a firearm. Shorter was referring to Willie Warren ("Warren"), who he referred to as

"Woodchuck." Cross and Beaver agreed to rob Warren, and Beaver already knew where Warren lived.

Shorter drove L.S., Beaver, and Cross in a Jeep owned by one of their acquaintances to the apartment complex where Warren lived. In the vehicle, the four discussed their plan for the robbery. Each participant had a ski mask, except for Shorter. When they arrived at the apartment complex, Shorter parked the Jeep near Warren's apartment. Cross, Beaver, and L.S. put on their masks and got out of the vehicle and went to Warren's apartment. Shorter remained in the Jeep.

Cross knocked on the door of Warren's apartment, and a woman opened the door. Beaver then pulled out a handgun, pushed the door open, and ordered the woman to lie face down on the couch. Beaver went into Warren's bedroom, where Warren was with another woman. Beaver started to rummage around the room while Cross and L.S. remained near the front door. Beaver struck Warren in the head with the gun while asking him "where the stuff was at." Beaver eventually left the bedroom, telling his companions that he couldn't find any of the drugs, money, or the safe mentioned by Shorter. After a search of the kitchen revealed nothing, Cross told Beaver that they should leave.

In the meantime, a young boy came running out of a back bedroom to be with the woman lying on the couch. At some point, this woman telephoned the police. When Cross told Beaver again that they should leave, Beaver grabbed a laptop computer, and the men ran back to the Jeep and fled the scene at a high rate of speed. Cross asked Shorter and Beaver why there had been no drugs in the apartment, and Shorter responded, "they must have just picked stuff up." Before the four men could return to Beaver's house, however, they were stopped by the police, who had been dispatched to the scene of the robbery and were looking for the vehicle used by the robbers. The police arrested Shorter, T.S., Cross, and Beaver, and found in the Jeep the stolen laptop computer, the ski masks used by the robbers, and the handgun used by Beaver, which was a BB gun, not a firearm.

On January 15, 2013, the State charged Shorter with Class B felony robbery while armed with a deadly weapon. The State later added a charge of Class A felony burglary. Following a jury trial held on August 4–6, 2014, the jury found Shorter guilty as charged. Shorter then admitted to being an habitual offender.

> At the September 4, 2014, sentencing hearing, the trial court found as aggravating Shorter's criminal history, that a child was present when the offense occurred, and that Shorter involved his teenage stepson in the crimes. The trial court also noted that Shorter was on probation for another offense when the instant offenses were committed. The court found as mitigating that Shorter did not go into the residence himself and that Shorter admitted to being an habitual offender. The trial court found that the aggravating factors outweighed the mitigating factors and imposed the following sentences: forty-five years on the Class A felony burglary conviction, a concurrent sentence of twenty years on the Class B felony robbery conviction, and fifteen years on the habitual offender enhancement, to be served consecutively to the other sentences, for an aggregate term of sixty years of incarceration.

Shorter v. State, 2015 WL 2170370, at *1–2 (Ind. App. 2015).

Mr. Shorter asserts that he received ineffective assistance of trial counsel because trial counsel advised him to plead guilty to the habitual offender enhancement and because trial counsel should have challenged Raymond Cross's mental health and should have deposed him. He asserts that he received ineffective assistance of appellate counsel because his appellate counsel didn't challenge the habitual offender enhancement.

Mr. Shorter also asserts that he received ineffective assistance of post-conviction counsel. While ineffective assistance of post-conviction counsel might, under some circumstances, constitute an excuse to procedural default, it isn't a basis for habeas relief as a freestanding claim. Coleman v. Thompson, 501 U.S. 722, 752 (U.S. 1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.").

PROCEDURAL DEFAULT

3

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); Lewis v. Sternes, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. Boyko v. Parke, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." Anderson v. Brevik, 471 F.3d 811, 814–815 (7th Cir. 2006) (citing Boyko, 259 F.3d at 788). It requires "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." Lewis v. Sternes, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." Id. "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." Id. Mr. Shorter didn't present any of his habeas claims to the State court and so is procedurally defaulted on these claims.

To excuse procedural bar, Mr. Shorter asserts that he had ineffective assistance of counsel during the post-conviction relief stage. As a general rule, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as cause." Maples v. Thomas, 565 U.S. 266, 280 (2012). However, "[i]nadequate

4

assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez v. Ryan, 566 U.S. 1, 9 (2012); Brown v. Brown, 847 F.3d 502 (7th Cir. 2017). "[A] prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez v. Ryan, 566 U.S. 1, 14 (2012). This exception doesn't apply to claims regarding appellate counsel, but the court will consider whether Mr. Shorter has shown that his procedurally defaulted claims regarding trial counsel have some merit.

## LEGAL STANDARDS

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Woods v. Donald, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's

> decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Woods v. Donald, 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. Rose v. Clark, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quotation marks omitted).

To prevail on an ineffective assistance of counsel claim in the state courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. at 693. In assessing prejudice under Strickland, "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied Strickland." McNary v. Lemke, 708 F.3d 905, 914 (7th Cir. 2013). "Given this

high standard, even 'egregious' failures of counsel do not always warrant relief."
Id.

## ANALYSIS

### Habitual Offender Enhancement

Mr. Shorter argues that he is entitled to habeas relief because his trial counsel advised him to plead guilty to the habitual offender enhancement, which resulted in the trial court's improper reliance on a fifteen-year old Class D felony to enhance his sentence by fifteen years. He argues that the court should excuse procedural default for this claim because post-conviction counsel was ineffective for not raising it.  The Warden responds that the operative version of this statute doesn't prohibit the use of Class D felonies or fifteen-year old felonies as the basis for a habitual offender enhancement.

The trial court sentenced Mr. Shorter as a habitual offender under Ind. Code § 35-50-2-8, relying on a felony conviction for armed criminal recklessness in April 2000 and on a felony conviction for battery of a pregnant woman in September 2009. "The sentencing statute in effect at the time a crime is committed governs the sentence for that crime." Harris v. State, 897 N.E.2d 927, 928–29 (Ind. 2008). The robbery of the Warren residence took place in January 2013. The version of the habitual offender statute in effect in January 2013 doesn't prohibit the use of Class D felonies or fifteen-year old felonies as the basis for a habitual offender enhancement. Ind. Code. § 35-50-2-8 (2013). This claim is not a basis for habeas relief, nor is it a basis to excuse procedural bar.

<u>Witness Raymond Cross</u>

Mr. Shorter argues that he is entitled to habeas relief because trial counsel should have challenged Raymond Cross's mental health and should have deposed him. He argues that the court should excuse procedural default for this claim because his post-conviction counsel was ineffective for not raising it.

At trial, Mr. Cross testified for the prosecution that, at Ricky Beaver's residence, Mr. Shorter told him that he had a target for a robbery: Woodchuck, a drug dealer who didn't carry weapons. Trial Tr. 285-287. According to Mr. Cross, Mr. Shorter then drove to an apartment complex, where Mr. Cross, Mr. Shorter's fourteen-year old son, and Mr. Beaver robbed the residents of one of the units. <u>Id.</u> at 288-303. Mr. Cross couldn't remember whether Mr. Shorter stayed in the car or went up the stairs with him to the apartment. <u>Id.</u> at 296. After the robbery, Mr. Shorter drove them away quickly and through parking lots to evade detection. <u>Id.</u> at 303-310. Mr. Cross falsely told Detective Conway in a post-arrest interview that Mr. Shorter went up to the apartment in an effort to protect Mr. Shorter's son. <u>Id.</u> at 311-313. At that time, he was under the influence of methamphetamine. <u>Id.</u> at 313-14. His testimony at trial was "by and large" the same as his statements during this interview. <u>Id.</u> at 355.

On cross-examination, Mr. Cross testified that he faced felony charges in connection with the robbery and could receive a sentence up to one hundred years of incarceration. <u>Id.</u> at 314-318. He agreed to testify against Mr. Shorter in

8

hopes that his testimony would be considered favorably during his sentencing. Id. at 318. Mr. Cross had prior convictions for crimes of dishonesty, including theft, forgery, and receiving stolen property. Id. He was a member of a street gang. Id. at 320. When he first spoke with police officers, he falsely told them that Mr. Beaver and he had picked up Mr. Shorter and his son at an apartment complex and that he did not participate in a robbery. Id. at 331-332.

At the post-conviction stage, the testimony of Mr. Cross and trial counsel focused on an affidavit Mr. Cross prepared in December 2013 and why trial counsel chose not to use it at trial. ECF 7-8 at 13-15. Mr. Cross attested in that affidavit that he made the accusatory statements to the police while intoxicated and due to police coercion. PCR Ex. 1. He attested that Mr. Shorter didn't participate or know about the robbery before it happened. Id. Mr. Cross's testimony at the evidentiary hearing was consistent with this affidavit. ECF 7-8 at 16.

Mr. Shorter hasn't shown that his claim that trial counsel should have challenged Cross's mental condition and should have deposed Cross has any merit. Mr. Shorter describes Mr. Cross as schizophrenic and alleges that Cross's symptoms consist of hearing voices, routine engagement in bizarre, inappropriate behavior, self-victimization, fantastical stories, and excitable utterances. ECF 31 at 3. The record contains no evidence that Mr. Cross had any of these symptoms, leaving it unlikely that declining to raise Mr. Cross's mental condition as a challenge to his credibility could amount to deficient performance. Mr. Cross's trial testimony closely resembled his statements to

9

Detective Conway, so it's unclear how the decision not to depose Mr. Cross could have prejudiced Mr. Shorter. Therefore, this claim is neither a basis for habeas relief nor a basis to excuse procedural bar.

CERTIFICATE OF APPEALABILITY

The court must grant or deny a certificate of appealability. Section 2254 Habeas Corpus Rule 11. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Mr. Shorter to proceed further.

For these reasons, the court DENIES the habeas corpus petition; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on February 18, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT